# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2019AP2150-CR |

| | |
|---|---|
| COMPLETE TITLE: | State of Wisconsin, Plaintiff-Respondent, v. Valiant M. Green, Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
(No Cite)

| | |
|---|---|
| OPINION FILED: | June 15, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | March 8, 2022 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Kenosha |
| JUDGE: | Bruce E. Schroeder |

JUSTICES:

HAGEDORN, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, REBECCA GRASSL BRADLEY, DALLET, and KAROFSKY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion.

NOT PARTICIPATING:

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Jay R. Pucek*, assistant state public defender. There was an oral argument by *Jay R. Pucek*, assistant state public defender.

For the plaintiff-respondent, there was a brief filed by *John A. Blimling*, assistant attorney general, with whom on the brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *John A. Blimling*.

**2022 WI 41**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2019AP2150-CR
(L.C. No. 2014CF594)

STATE OF WISCONSIN        :        IN SUPREME COURT

**State of Wisconsin,**

    **Plaintiff-Respondent,**

    **v.**

**Valiant M. Green,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**JUN 15, 2022**

Sheila T. Reiff
Clerk of Supreme Court

HAGEDORN, J., delivered the majority opinion of the Court, in which ZIEGLER, C.J., ROGGENSACK, REBECCA GRASSL BRADLEY, DALLET, and KAROFSKY, JJ., joined. ANN WALSH BRADLEY, J., filed a dissenting opinion.

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1 BRIAN HAGEDORN, J. The Fourth Amendment to the United States Constitution provides in relevant part: "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation . . . ."[1] After Valiant M. Green was arrested for operating while intoxicated (OWI), law enforcement obtained a warrant to draw his blood. Green now argues the facts

---

[1] See also Wis. Const. art. I, § 11.

supporting that warrant were insufficient to find probable cause. We disagree.

¶2 When we examine whether a warrant issued with probable cause, we review the record that was before the warrant-issuing judge. State v. Ward, 2000 WI 3, ¶27, 231 Wis. 2d 723, 604 N.W.2d 517. Specifically, we look at the affidavits supporting the warrant application and all reasonable inferences that may be drawn from the facts presented. Id., ¶¶26, 28. However, our review is not independent; we defer to the warrant-issuing judge's determination "unless the defendant establishes that the facts are clearly insufficient to support a probable cause finding." Id., ¶21. Probable cause exists where, after examining all the facts and inferences drawn from the affidavits, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).

¶3 Here, the circuit court issued a search warrant to draw Green's blood based on the affidavit of Kenosha Police Officer Mark Poffenberger.[2] The affidavit took the form of a pre-printed document with blank spaces and check-boxes that Officer Poffenberger completed. It stated that around 1:19 p.m. on May 25, 2014, Green "drove or operated a motor vehicle at driveway of [Green's home address]"——the underlined portion being part of the preprinted form, and the remainder Officer

---

[2] The Honorable Bruce E. Schroeder of the Kenosha County Circuit Court signed the warrant and presided over all the circuit court proceedings relevant to this appeal.

Poffenberger's handwritten addition. Several checked boxes provided additional facts. First, Green was arrested for the offense of "Driving or Operating a Motor Vehicle While Impaired as a Second or Subsequent Offense, contrary to chapter 346 Wis.Stats." Second, Green "was observed to drive/operate the vehicle by" both "a police officer" and "a citizen witness," whose name was written in by Officer Poffenberger. A third checked box was labeled "basis for the stop of the arrestee's vehicle was," and Officer Poffenberger supplied "citizen statement" by hand.

¶4  The affidavit also described Green's statements and the officer's observations. According to Officer Poffenberger's handwritten note, Green "admitted to drinking alcohol at the house." And Officer Poffenberger checked several boxes noting that when he made contact with Green, he observed a strong odor of intoxicants, red/pink and glassy eyes, an uncooperative attitude, slurred speech, and an unsteady balance. Finally, Officer Poffenberger checked boxes indicating that Green refused to perform field sobriety tests, refused to submit to a preliminary breath test, and was "read the 'Informing the Accused' Statement . . . and has refused to submit to the chemical test requested by the police officer."

¶5  After the warrant issued, medical staff drew Green's blood. It revealed a blood alcohol level of 0.214 g/100 mL, an

amount well above the legal limit.[3]  The State charged Green with fourth offense OWI, fourth offense operating with a prohibited alcohol concentration (PAC), and resisting an officer.  Green moved to suppress the results of the blood draw on the grounds that the warrant was deficient.  The circuit court denied the motion.  It concluded that even if the court erroneously issued the warrant (the court thought it had), the error did not merit suppression.[4]  At trial, the jury found Green guilty of OWI and PAC.  The circuit court granted the State's motion to dismiss the OWI count and entered judgment against Green on the PAC count.  The court of appeals summarily affirmed, holding the circuit court properly issued the warrant in the first place.[5]  We granted Green's petition for review.

---

[3] Because Green had "3 or more prior convictions, suspensions or revocations," his legal limit was 0.02.  Wis. Stat. § 340.01(46m)(c) (2013-14).

All subsequent references to the Wisconsin Statutes are to the 2013-14 version.

[4] The circuit court's later disagreement with its own decision to issue the warrant does not change the scope of our review or our deference to its decision to issue the warrant. "[W]e are confined to the record that was before the warrant-issuing commissioner" and give "[g]reat deference . . . to the warrant-issuing commissioner's determination of probable cause." State v. Kerr, 181 Wis. 2d 372, 378-79, 511 N.W.2d 586 (1994). This deferential standard "is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant."  Massachusetts v. Upton, 466 U.S. 727, 733 (1984); see also United States v. Curry, 538 F.3d 718, 729 (7th Cir. 2008) (giving deference to the warrant issuing judge but not the judge reviewing the decision to issue the warrant).

[5] State v. Green, No. 2019AP2150-CR, unpublished order (Wis. Ct. App. Mar. 31, 2021).

4

¶6 Before us, Green continues to argue the warrant was issued without probable cause. He focuses not on the indicia of intoxication, but the location where he operated his vehicle. Green's main argument is that the handwritten word "driveway" on the form alleges only that he drove within the confines of his driveway. This matters because the statute criminalizing OWI and PAC offenses—Wis. Stat. § 346.63(1)(a), (1)(b)—does "not apply to private parking areas at . . . single-family residences." Wis. Stat. § 346.61. Rather, the laws apply "upon highways"[6] and "premises held out to the public for use of their motor vehicles." Id. Green's driveway is not a highway nor is it a held out to the public for motor vehicle use.[7] Thus, because Green would not have committed an OWI or PAC by operating his vehicle on his driveway, Green contends the affidavit alleged only noncriminal activity and fell short of showing probable cause that any criminal activity occurred.

¶7 Green's argument fails, however, because reasonable inferences from the affidavit support finding probable cause that Green drove on a public road. And that's all that is needed. "Probable cause is not a technical, legalistic concept

---

[6] Highways are defined as "all public ways and thoroughfares and bridges on the same." Wis. Stat. § 340.01(22). A highway also "includes a private road or driveway that is subject to an agreement for traffic regulation enforcement." Wis. Stat. § 346.01(1m).

[7] See City of La Crosse v. Richling, 178 Wis. 2d 856, 858-60, 505 N.W.2d 448 (Ct. App. 1993) (analyzing whether a tavern's parking lot was held out to the public for motor vehicle use).

but a flexible, common-sense measure of the plausibility of particular conclusions about human behavior." State v. Higginbotham, 162 Wis. 2d 978, 989, 471 N.W.2d 24 (1991) (quoting another source). So when we examine a warrant application, the "test is not whether the inference drawn is the only reasonable inference." Ward, 231 Wis. 2d 723, ¶30. Rather, the "test is whether the inference drawn is a reasonable one." Id. This warrant passes the test.

¶8 Following the pre-printed word "at" is space for a location, which Officer Poffenberger identified as the driveway of Green's residential address. It is reasonable to read the officer's addition of the phrase "driveway of [residential address]" to refer to a specific location on the road, much like an intersection would provide a similarly specific location. The affidavit does not say Green's driving occurred merely in his driveway, but at his driveway——a location that can reasonably be read to refer to a position on the road adjacent to his driveway. Other portions of the affidavit are consistent with this reading. The affidavit points to two witnesses who observed Green "drive/operate the vehicle": a police officer and a named citizen witness.[8] And the stop was occasioned by a citizen statement; someone besides the officer saw something that occasioned a call to the police. Viewing the entire

---

[8] See Florida v. J.L., 529 U.S. 266, 270 (2000) (noting the reliability of "a tip from a known informant whose reputation can be assessed and who can be held responsible if her allegations turn out to be fabricated").

6

affidavit together, a judge could reasonably infer that Green operated his vehicle on the road while intoxicated, not solely in his driveway. This "is not the only inference that can be drawn, but it is certainly a reasonable one." Ward, 231 Wis. 2d 723, ¶30.

¶9 Examining the totality of the facts laid out in the affidavit, we conclude Green has not met his burden to show the affidavit was clearly insufficient to support a finding of probable cause. Accordingly, Green's challenge to the warrant and motion to suppress the evidence obtained thereby fails.[9]

*By the Court.*——The decision of the court of appeals is affirmed.

---

[9] Because we determine the search warrant properly issued, we do not address the State's arguments that suppression would not be an appropriate remedy if the warrant were deficient.

¶10 ANN WALSH BRADLEY, J. *(dissenting).* Green's Fourth Amendment right protecting him against unreasonable searches was violated when law enforcement drew his blood based on a search warrant that wholly lacked probable cause. The existence of probable cause to show that a crime was committed is not a mere technicality. Rather it is basic to our Fourth Amendment protections.

¶11 Confronted with the absence of probable cause here, the majority contrives to manufacture its presence. The affidavit in support of the warrant said that Green drove his car while intoxicated "at his driveway." But this isn't a crime. The law requires that one drive on a highway,[1] and Green's private driveway obviously does not meet that requirement. See Wis. Stat. § 346.61.

¶12 In retrospect, even the warrant-issuing judge in this case acknowledged that the facts alleged in the affidavit in support of the search warrant did not amount to probable cause. He recognized that "I did make an error in not frankly asking the officer" for "more data."

¶13 Failing to acknowledge what in retrospect was apparent to the warrant-issuing judge, the majority nevertheless seemingly shrugs off this essential requirement and forges ahead to reach its inexorable conclusion. It determines that "Green has not met his burden to show the affidavit was clearly

---

[1] Throughout this opinion, I use "highway" as a catchall to refer to the public ways and thoroughfares upon which Wisconsin's operating while intoxicated laws apply. See Wis. Stat. § 340.01(22).

1

insufficient to support a finding of probable cause." Majority op., ¶9.

¶14 The majority errs in at least two respects. First, it insists that it is reasonable to draw several inferences from the affidavit despite the fact that the affidavit has a glaring omission: it contained no indication that a crime had been committed at all.

¶15 Second, the majority disregards this court's decision in State v. Tye, which addressed an analogous scenario resulting in the suppression of evidence when an essential search warrant requirement was lacking. 2001 WI 124, 248 Wis. 2d 530, 636 N.W.2d 473. The existence of probable cause to believe a crime has been committed "is so basic to the Fourth Amendment that the Court simply can't look at" the lack of it "as a technical irregularity not affecting the substantial rights of the defendant." Id., ¶14.

¶16 Contrary to the majority, I conclude that the probable cause requirement should not be so readily subverted and that the results of this unlawful search should have been suppressed. Because the majority manufactures probable cause and in the process disregards an essential search warrant requirement, I respectfully dissent.

I

¶17 Valiant Green was arrested for operating a motor vehicle while intoxicated outside his home in Kenosha. Majority op., ¶3. Upon his arrest, the officer requested a breath test from Green, which he refused. Id., ¶4. The officer then sought

2

a search warrant to draw Green's blood and submitted an affidavit in support of the warrant, which was a fill-in-the-blank form.[2] Id., ¶3. "[D]rove or operated a motor vehicle at" was preprinted on the affidavit, after which the officer handwrote in "driveway of [Green's home address]." Id.

¶18 The affidavit also indicated, without further explanation, that the "basis for the stop of the arrestee's vehicle" was a citizen statement and that Green admitted to drinking alcohol at the house. Id., ¶¶3-4. In checking off certain boxes on the pre-printed form, the officer marked various indicators of intoxication, including that the odor of intoxicants was "strong," that Green's eyes appeared "red/pink" and "glassy," that Green's speech was "slurred," and that Green was uncooperative and unsteady. Id., ¶4. The reviewing judge signed the search warrant, authorizing the police to draw Green's blood. At the hospital, the same officer who applied for the warrant also executed it, and as a result, medical staff completed a blood draw. Id., ¶5.

¶19 Green was charged with operating while intoxicated (OWI) and operating with a prohibited alcohol concentration (PAC), both as a fourth offense. Id. He moved to suppress the results of the blood draw, arguing that the warrant application did not provide sufficient facts to support a finding of probable cause. The circuit court denied the motion, but at the suppression hearing, the same judge who issued the warrant

---

[2] The search warrant at issue is attached as an appendix to this dissent.

3

recognized that "I did make an error in not frankly asking the officer" for "more data."[3]

¶20 At trial, the jury found Green guilty of OWI and PAC. Id. On appeal, the court of appeals summarily affirmed, determining that the circuit court properly issued the warrant because the word "at" in the affidavit could mean Green was operating a vehicle on a public road "near" his driveway. State v. Green, No. 2019AP2150-CR, unpublished order, at 3-4 (Wis. Ct. App. Mar. 31, 2021). A majority of this court now affirms, determining that "reasonable inferences from the affidavit support finding probable cause that Green drove on a public road." Majority op., ¶7.

II

¶21 The Fourth Amendment to the United States Constitution and Article I, Section 11 of the Wisconsin Constitution protect against unreasonable searches and seizures. State v. Eason, 2001 WI 98, ¶16, 245 Wis. 2d 206, 629 N.W.2d 625. Both constitutional provisions require that a search warrant not issue unless there is a finding of probable cause.[4] "Fourth

---

[3] I agree with the majority that the circuit court's later disagreement with its own decision to issue the warrant does not change the nature and scope of our review. See majority op., ¶5 n.4. However, I find it persuasive that even the warrant-issuing judge acknowledged that the facts alleged in the affidavit in support of the search warrant did not amount to probable cause.

[4] The Fourth Amendment of the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

4

Amendment rights are indispensable to the full enjoyment of personal security, personal liberty and private property." State v. Scull, 2015 WI 22, ¶19, 361 Wis. 2d 288, 862 N.W.2d 562 (quotation omitted).

¶22 It is true that our review of a decision to issue a warrant is guided by deference to the warrant-issuing judge's determination. See majority op., ¶2; State v. Ward, 2000 WI 3, ¶21, 231 Wis. 2d 723, 604 N.W.2d 517. However, "Deference to the magistrate . . . is not boundless." United States v. Leon, 468 U.S. 897, 914 (1984). The majority hides behind deference contrary to the command that "reviewing courts will not defer to a warrant based on an affidavit that does not provide the magistrate with a substantial basis for determining the existence of probable cause." Id. at 915 (quotation omitted).

A

¶23 First, the majority errs by drawing several inferences from an affidavit that does not allege a crime has actually been committed. Majority op., ¶¶7-8. Wisconsin's OWI laws apply only to highways and "premises held out to the public for use of their motor vehicles." Wis. Stat. § 346.61. Such laws explicitly do not apply to "private parking areas" at single-

---

Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(Emphasis added).

Article I, Section 11 of the Wisconsin Constitution contains identical language.

5

family residences. Id. ("Sections 346.62 to 346.64 do not apply to private parking areas at farms or single-family residences.").

¶24 "Highway"[5] and "Private road or driveway"[6] are specially defined in the Wisconsin Statutes. Wis. Stat. § 340.01(22), (46). Simply put, operating a motor vehicle while intoxicated on a private driveway at a single-family residence like Green's is not a crime under Wisconsin law.[7] See City of Kenosha v. Phillips, 142 Wis. 2d 549, 556, 419 N.W.2d 236 (1988) (rejecting an argument that OWI laws apply "even on home driveways or in the garages of private persons"). Probable cause does not exist where no crime has been alleged. Thus, we owe no deference here where the affidavit fails to provide a substantial basis for determining the existence of probable cause. See Leon, 468 U.S. at 915.

¶25 Despite the fact that the OWI statutes apply only on highways and not private roads or driveways, the majority insists that the handwritten "driveway" could "refer to a specific location on the road, much like an intersection would

---

[5] "'Highway' means all public ways and thoroughfares and bridges on the same . . . but does not include private roads or driveways as defined in sub. (46)." Wis. Stat. § 340.01(22) (emphasis added).

[6] Wis. Stat. § 340.01(46) provides, "'Private road or driveway' is every way or place in private ownership and used for vehicular travel only by the owner and those having express or implied permission from the owner . . . ."

[7] There is no question that "Green's driveway is not a highway nor is it held out to the public for motor vehicle use," as even the majority acknowledges. Majority op., ¶6.

6

provide a similarly specific location." Majority op., ¶8. But the affidavit did not say "at the intersection" or "on the road adjacent to the driveway." The majority would have us believe that "at the driveway" does not mean what it says. How can it be reasonable to infer that a crime has been committed when the only reasonable inference that can be drawn from the affidavit is that Green was operating a vehicle at his own driveway?

¶26 Perhaps aware that "at the driveway" does not equate to a highway, the majority points to other facts alleged in the affidavit in support of its conclusion. It offers the following facts as a basis for reasonably inferring the location necessary to establish probable cause. That is, that Green was operating on a highway and not his private driveway:

| Facts | Reasonable inference from this fact that Green was operating a vehicle on a highway |
|---|---|
| Green was observed to drive/operate the vehicle by both a police officer and citizen witness. Majority op., ¶8. | There is no reference by either witness regarding location, other than "at the driveway." |
| The basis for the stop was a citizen's statement. Id. | The basis for the stop does not reference the location. |
| The name of the citizen witness was written on the affidavit. Id., ¶3. | The name of the citizen witness provides no information about location. |
| Green admitted to drinking at the house. Id., ¶4. | The admission only references Green's private home as the location. |
| The officer observed Green exhibit indicators of intoxication. Id. | The observation says nothing about location. |
| Green refused to perform field sobriety tests or submit to a breath test. Id. | The refusals indicate nothing regarding location. |

¶27 What do all of these facts have in common? None of them indicates that Green was observed operating a vehicle anywhere other than his private driveway. The majority's math doesn't add up——zero plus zero plus zero still equals zero. The majority pulls the reasonableness of its inferences out of thin air, seemingly assuming the existence of probable cause by the sole fact that law enforcement applied for a warrant.

¶28 Given the brevity of the majority opinion, there is an apparent limit to the analytical gymnastics that the majority is willing to engage in, endeavoring to explain that "at the driveway" somehow does not really mean what it says. Such flimsy rationale is inadequate when the court is depriving a defendant of a constitutional right. Why would the officer

8

write in the word "driveway" if that is not precisely where Green was operating his vehicle?

¶29 All we can glean from the affidavit was that Green may have been drunk in his driveway, which is obviously not a crime. If Green had been driving on a highway near his home, the officer's handwritten inclusion of the word "driveway" would have been completely unnecessary.

¶30 Admittedly probable cause is a low standard, but the court needs at least something to show that a crime was committed. Here the majority attempts to manufacture that something out of nothing.

B

¶31 Second, the majority disregards this court's decision in State v. Tye. In Tye, the court reviewed whether evidence must be suppressed when an affidavit lacks the oath or affirmation required by both the federal and state constitutions. 248 Wis. 2d 530, ¶3. In that case, the court determined "that the total absence of any statement under oath to support a search warrant violates the explicit oath or affirmation requirement of both the federal and state constitutions and that the warrant therefore is constitutionally infirm." Id.

¶32 In so concluding, the Tye court explained that "[t]his court has long recognized an oath or affirmation as an essential prerequisite to obtaining a valid search warrant under the state constitution." Id., ¶13. It further reasoned that "failure to swear to the information upon which a warrant is obtained cannot

9

be dismissed as a mere failure to comply with a technicality" and "the oath or affirmation requirement 'is so basic to the Fourth Amendment that the Court simply can't look at it as a technical irregularity not affecting the substantial rights of the defendant.'" Id., ¶14 (citation omitted). Accordingly, "The warrant was facially defective because no sworn affidavit was attached." Id., ¶5.

¶33 If the oath or affirmation requirement is so essential to the Fourth Amendment, why isn't the probable cause requirement equally as essential? Both the state and federal constitutions contain more than just an oath or affirmation requirement. They say no warrant shall issue but upon probable cause, supported by oath or affirmation. Wis. Const. art. I, § 11; U.S. Const. amend. IV. The court's reasoning in Tye applies equally to the probable cause requirement here.

¶34 Like the oath or affirmation requirement, the probable cause requirement is "so basic to the Fourth Amendment that the Court simply can't look at it as a technical irregularity not affecting the substantial rights of the defendant." Tye, 248 Wis. 2d 530, ¶14. As was the result in Tye, the good faith exception does not apply and suppression is the appropriate remedy here because without the fulfillment of this essential search warrant requirement, "it is plainly evident that a magistrate or judge had no business issuing a warrant." Id., ¶24.

¶35 Green's Fourth Amendment right protecting him against unreasonable searches was violated when the police drew his

10

blood based on a warrant that wholly lacked probable cause. The results of this unlawful search should have been suppressed. And even if suppression of the blood evidence would lead to results that may appear to the court as "unjust or contrary" to the state's policies on operating while intoxicated, "that does not give this court the leeway" to deprive Green of his constitutional right to be free from unreasonable searches. See Phillips, 142 Wis. 2d at 560.

¶36  For the foregoing reasons, I respectfully dissent.

STATE OF WISCONSIN : CIRCUIT COURT : AFFIDAVIT FOR SEARCH WARRANT FOR BLOOD DRAW

(Affiant) _MARK POFFENBERGER_, SWORN ON OATH states: I am a certified law enforcement officer since _05/07_. I have either personal knowledge of the truth of this affidavit, or rely on reports of fellow officers whom I know from past dealings are reliable, or on reports of persons who state that they have personally observed what they report. I have been trained in the investigation of operating motor vehicles under the influence of alcohol and/or drugs cases and have previously participated in the investigation and arrest of individuals operating under the influence of intoxicants, and have been trained in the administration and evaluation of field sobriety tests, and have used these field sobriety tests in the investigation of impaired driving cases, underage alcohol consumption cases and other cases involving the consumption of intoxicants. I am seeking a warrant to draw the blood of the arrestee below, who is suspected of operating a motor vehicle while under the influence of an intoxicant or related crime in violation of Chapter 346 of the Wisconsin Statutes or any other statute including, but not limited to, Bail Jumping §946.49, Endangering Safety by Use of a Dangerous Weapon §941.20, Injury by Intoxicated Use of a Motor Vehicle §940.25 and Homicide by Intoxicated Use of a Motor Vehicle §940.09 Wis. Stats. This arrestee's blood may contain alcohol, a controlled substance, or a controlled substance analog, which may constitute evidence of the offense.

The arrestee is believed to be named _VALIANT M. GREEN_ DOB _12-12-71_

and on _05-25_, 20 _14_, at or about _1:19_ pm/am, drove or operated a motor vehicle at _DRIVEWAY OF 3207 45 ST._ (name of road/highway) in _KENOSHA_ County, Wisconsin.

The arrestee is presently in custody of _MARK POFFENBERGER_ a law enforcement agency, which would present the arrestee for execution of the warrant requested herein. The arrestee has been arrested for an offense of:
☐ Driving or Operating a Motor Vehicle While Impaired as a First Offense, contrary to Chapter 346 Wis. Stats.
☑ Driving or Operating a Motor Vehicle While Impaired as a Second or Subsequent Offense, contrary to chapter 346 Wis.Stats.
☐ Driving or Operating a Motor Vehicle with a Prohibited Alcohol Concentration as a Second or Subsequent Offense, contrary to chapter 346 Wis.Stats
☐ Driving or Operating a Motor Vehicle with a Detectable Amount of a Restricted Controlled Substance, contrary to chapter 346 Wis.Stats.
☐ Operating a Motor Vehicle While Impaired and Causing Injury, contrary to chapter 346 Wis.Stats. and/or §940.25 Wis.Stats.
☐ Operating a Motor Vehicle with a Prohibited Alcohol Concentration and Causing Injury, contrary to chapter 346 Wis.Stats. and/or §940.25 Wis.Stats.
☐ Homicide by Intoxicated Use of a Motor Vehicle, contrary to §940.09 Wis.Stats.
☐ Other (name of crime and statute violated):_____

The arrestee was driving/operating a motor vehicle on the above date and time based on the following facts:
☐ The arrestee admitted to driving/operating the vehicle.
☑ The arrestee was observed to drive/operate the vehicle by a police officer.
☑ The arrestee was observed to drive/operate the vehicle by a citizen witness named _NANCY A. TRAKAS_.
☐ Other _____

The basis for the stop of the arrestee's vehicle was:
☐ Violation of state or local traffic law(s):_____
☐ Involvement in crash
☑ Other _CITIZEN STATEMENT_

The arrestee made the following statements:
☑ Admitted to consuming intoxicants (describe) _ADMITTED TO DRINKING ALCOHOL AT THE HOUSE_

☐ Admitted to ingesting drugs (describe) _____

☐ Other statements _____
The following evidence of intoxicant or drug use was observed on scene/arrestee:

☐ Alcohol container _____ **FILED**

☐ Drugs/drug paraphernalia_____

FEB 17 2015

REBECCA MATOSKA - MENTINK
CLERK OF CIRCUIT COURT
Page 1 of 2

**EXHIBIT**
D-3
14 CF594

OWI Blood Draw Search Warrant Affidavit - Form No. 1 - Revised 2013 06 06 PM0300

29-1

1

During contact with the arrestee, the following observations were made:

**Odor of intoxicants**
- ☒ Strong
- ☐ Moderate
- ☐ Faint
- ☐ Odor of Marijuana

**Eyes**
- ☐ Bloodshot
- ☒ Red/Pink
- ☒ Glassy
- ☐ Dilated
- ☐ Constricted

**Attitude/conduct**
- ☐ Cooperative
- ☒ Uncooperative
- ☐ Combative
- ☐ Drowsy/On the nod
- ☐ Confused
- ☐ Mood swings
- ☐ _____

**Speech**
- ☐ Incoherent
- ☒ Slurred
- ☐ Slow
- ☐ Rapid

**Balance**
- ☐ Falling
- ☒ Unsteady
- ☐ Swaying
- ☐ Needed support

**Other Observations**
- ☐ _____
- ☐ _____
- ☐ _____
- ☐ _____

**Field Sobriety Tests (FSTs):**
- ☒ Refused to perform FSTs.
- ☐ Horizontal Gaze Nystagmus (HGN): _____ of 6 possible indicators of impairment.

- ☐ Walk and Turn (WAT): _____ of 8 possible indicators of impairment.

- ☐ One Leg Stand (OLS): _____ of 4 possible indicators of impairment.

- ☐ Other FSTs:_____
- ☐ Unable to perform due to injury.
- ☐ Unable to perform due to impairment safety concerns.

The arrestee was asked to take a preliminary breath test (PBT) which produced a result of _____%.
- ☒ The arrestee refused to submit to the PBT.

For Bail Jumping Cases:
- ☐ A Bond condition in _____ County Case No. _____ now in effect prohibits alcohol consumption by the arrestee.

During the investigation, police officers learned additional facts which further support probable cause, including

_____

_____

- ☒ The arrestee has been read the "Informing the Accused" Statement prescribed by the Wisconsin Implied Consent law and has refused to submit to the chemical test requested by the police officer.
- ☐ The arrestee driving is unconscious.

I request that a search warrant be issued to search the arrestee to obtain two samples of the arrestee's blood, one hour apart, for chemical analysis by a proper authority, for use in the Circuit Court according to law.

KENOSHA WI, MAY 25, 20 14. _____

_signature_ Affiant/Officer

Sworn to before me on  05-25  20 14

_signature_
Notary Public / Circuit Court Judge/Commissioner

My commission is permanent/expires  09-21-14 .                     Page 2 of 2

OWI Blood Draw Search Warrant Affidavit - Form No. 1 - Revised 2013 06 06 PM0300

29-2

1